UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP and PARAMOUNT PICTURES CORPORATION,<br><br>            Plaintiffs<br><br>v.<br><br>CLINT BIGWOOD,<br>            Defendant | Civil No. 05-229-P-C |

Gene Carter, Senior United States District Judge

**MEMORANDUM OF DECISION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Court now has before it Universal City Studios Productions LLLP ("Universal") and Paramount Pictures Corporation ("Paramount") (collectively, "Plaintiffs") Motion for Summary Judgment. Docket Item No. 16. Defendant Clint Bigwood has not responded to Plaintiffs' Motion. For the reasons stated below, the Court will grant Plaintiffs' Motion for Summary Judgment.

**I. PROCEDURAL BACKGROUND**

On December 15, 2005, Plaintiffs filed this action against Defendant for copyright infringement, seeking statutory damages, a permanent injunction, and attorneys' fees and costs. Complaint (Docket Item No. 1). Defendant's counsel, Joseph Goodman filed an Answer on February 3, 2006. Answer (Docket Item No. 9). On February 15, 2006, Attorney Goodman filed an unopposed motion to withdraw. Motion to Withdraw

(Docket Item No. 11). A conference with the Court on Attorney Goodman's Motion to Withdraw was held on March 9, 2006.[1] After the conference the Court issued an order granting Attorney Goodman's Motion to Withdraw and instructing Attorney Goodman to advise Defendant in writing of (i) the granting of his motion to withdraw, (ii) the fact that the Defendant now appears in this action pro se, and (iii) the Defendant's obligation to abide by all of the requirements and deadlines of the operative scheduling order. See Order Granting Motion to Withdraw (Docket Item No. 13).

In response to the Court's instructions, Attorney Goodman sent Defendant a letter dated March 9, 2006, informing him that Defendant would be proceeding pro se and enclosing the scheduling order issued by the Court and a copy of Rule 26 of the Federal Rules. Letter from Attorney Goodman to Clint Bigwood (Docket Item No. 15). On March 10, 2006, Plaintiffs' counsel also sent Defendant a letter informing him of his obligations under Rule 26 and notifying him that discovery would be served on him shortly. DeNeve Decl. Exh. D; DeNeve Decl. ¶ 10. Additionally, the letter requests that Defendant or his attorney contact Plaintiffs' attorney within one week of receipt of the letter to schedule a conference regarding discovery and potential settlement. DeNeve Decl. Exh. D. Defendant never responded to Plaintiffs' letter. DeNeve Decl. ¶ 10. On March 21, 2006, Plaintiffs served various discovery requests on Defendant, including Requests for Admissions ("RFAs"). DeNeve Decl. Exh. E; DeNeve Decl. ¶ 11. Defendant failed to respond to any of these discovery requests. DeNeve Decl. ¶ 12.

---

[1] Defendant was notified of the conference and of the court's instruction that he personally participates in the conference, but Defendant did not join the conference. *See* Order Granting Motion to Withdraw (Docket Item No. 13).

Federal Rule of Civil Procedure 36 specifically provides that requests for admissions are automatically deemed admitted if not answered within 30 days, and that the matters therein are "conclusively established" unless the court, on motion, permits withdrawal or amendment of the admissions. Fed. R. Civ. P. 36(a) and (b). A motion for summary judgment may be premised upon admissions made pursuant to this rule, and summary judgment can be properly granted on facts that are admitted because a party failed to respond to a request for admission. *See* Fed. R. Civ. P. 56(c) (specifies that "admissions on file" can be an appropriate basis for granting summary judgment; *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) (bankruptcy court properly granted government's motion for summary judgment based on failure of Chapter 7 debtor to respond to a request that he admit that the IRS claim against the estate was accurate); *United States v. 2204 Barbara Lane,* 960 F.2d 126, 129-30 (11th Cir. 1992) (summary judgment was properly entered against claimant who failed to respond to requests for admissions in civil forfeiture action); *Brook Village North Associates v. General Electric Co.*, 686 F.2d 66, 70 (1st Cir. 1982) ("courts have not hesitated in appropriate cases to apply the sanction of Rule 36 to material facts that conclusively establish or preclude a party's claim.").

## II. FACTS

The following facts are established in the undisputed summary judgment record. Plaintiffs are motion picture studios, engaged in the production, distribution, and sale of motion pictures. Declaration of Greg Goeckner ("Goeckner Decl.") ¶ 5. Plaintiffs are the holders of rights in and to the copyright in many motion pictures, including *Coach Carter* and *Half Baked* (the "Motion Pictures"). Declaration of Alexandra DeNeve

("DeNeve Decl.") ¶ 2; Declaration of Alfred Perry ("Perry Decl.") ¶ 2; DeNeve Decl., Exh. D, No. 12.  Paramount is the exclusive licensee of the copyright in *Coach Carter*. Perry Decl. ¶ 2.  Universal owns the copyright in *Half Baked*.  DeNeve Decl. ¶ 2 and Exh. B.  Each of the Motion Pictures is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.  DeNeve Decl. ¶ 3, Exhs. A and B.

Once a motion picture has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.  Goeckner Decl. ¶ 4.  "Peer-to-peer" ("P2P") networks have made it possible for millions of users to unlawfully obtain – and distribute for free – unauthorized digital copies of motion pictures that Plaintiffs spend millions of dollars to create and/or distribute.  *Id*. ¶ 6.  P2P networks utilize file-sharing programs that enable users to swap digital files by other users who are connected to the same P2P network.  *Id*.  A user's "shared directory" is the listing of files on his computer available for download by others.  Declaration of Thomas Carpenter ("Carpenter Decl.") ¶ 6.  In the digital environment, a person who stores copyrighted files in a shared directory makes those files immediately and readily available for download by other P2P users every time he or she logs on to a P2P network. *Id*.  Neither Universal nor Paramount has ever authorized any of its motion pictures to be distributed on P2P networks.  Goeckner Decl. ¶ 7.

Defendant is an individual user of KaZaA, a popular P2P network.  RFAs No. 1. Defendant downloaded unauthorized digital files containing the Motion Pictures to his hard drive.  *Id*. at Nos. 1, 4, 14.  When Defendant downloaded the Motion Pictures onto his hard drive, he knew the Motion Pictures were copyrighted.  *Id*. at No.13.  Defendant

4

stored the Motion Pictures in his computer's shared directory. *Id.* at Nos. 3, 5, 11; Carpenter Decl. ¶ 6. By storing the Motion Pictures in his shared directory, Defendant made the Motion Pictures available for download by thousands of other KaZaA users every time he logged on to KaZaA. *Id.* at No. 6; Carpenter Decl., ¶ 6. Defendant knew he was not authorized to download, or make available for download by others, files containing the subject Motion Pictures over a P2P network or by any means. RFAs Nos. 14, 15.

Plaintiffs engaged MediaSentry, a provider of anti-piracy services, to identify and gather evidence of infringement of Plaintiffs' motion pictures on P2P networks. DeNeve Decl. ¶ 4; Carpenter Decl. ¶ 3. Plaintiffs' provided MediaSentry with a list of copyrighted motion pictures that they believed may appear on P2P networks. Carpenter Decl. ¶ 4. To determine whether a specific motion picture is being offered on a particular network, MediaSentry connects to the network and searches for users who are offering copies of the motion picture. DeNeve Decl. ¶ 5; Carpenter Decl. ¶ 4. On April 6, 2005, MediaSentry logged onto the KaZaA network and located an individual who was offering the Motion Pictures for download. DeNeve Decl. ¶ 5; Carpenter Decl. ¶ 5; Declaration of Christopher Harshman ("Harshman Decl.") ¶ 3. While the files were downloading, MediaSentry executed an evidence gathering software program that obtained the Internet Protocol ("IP") address assigned to that user, and thereby ascertained that the IP address assigned to this user was 24.31.148.194. Carpenter Decl. ¶ 7. An IP address is a unique identifier that is automatically assigned to a user by his or her Internet Service Provider ("ISP") each time he or she logs onto the network. Carpenter Decl. ¶ 9. Plaintiffs then filed a "John Doe" Complaint against this individual and, after obtaining a court order,

issued a subpoena to the Defendant's ISP Time Warner Cable ("Time Warner") in order to determine who was assigned the above-referenced IP address on April 6, 2005, at 7:52 PM EST.  DeNeve Decl. ¶ 6.  In its response to Plaintiffs' subpoena, Time Warner identified Defendant, Clint Bigwood, as the Time Warner subscriber to whom the IP address 24.31.148.194 was assigned on April 6, 2005, at 7:52 PM EST.  *Id*. ¶ 7, Exh. C; RFAs No. 10.

### III. DISCUSSION

**Summary Judgment Standard**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'"  *Navarro v. Pfizer Corp*., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).  The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Nicolo v. Philip Morris, Inc*., 201 F.3d 29, 33 (1st Cir. 2000).  Once the moving party has made a preliminary showing that no genuine issue of

material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants [granting] summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### A. Copyright Infringement

A plaintiff claiming copyright infringement must show both (1) ownership of a valid copyright and (2) unauthorized copying of original elements of the work.  *See Matthews v. Freedman*, 157 F.3d 25, 26-27 (1st Cir. 1998); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 605 (1st Cir. 1988).  There is no dispute in this case that both the motion pictures, *Coach Carter* and *Half Baked,* are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.  DeNeve Decl. ¶ 3, Exhs. A and B.  Paramount is the exclusive licensee of the copyright in *Coach Carter*, Perry Decl. ¶ 2, and Universal owns the copyright to *Half Baked,* DeNeve Decl. ¶ 2 and Exh. B.  Thus, Plaintiffs have established the first element of copyright infringement.

Turning to the second element of a copyright infringement claim, "Copying is demonstrated when someone who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106." *Gamma Audio & Video, Inc.  v. Ean-Chea*, 11 F.3d 1106,

1115 (1st Cir. 1993) (quoting *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3rd Cir. 1991)).  The rights protected in § 106 of the Copyright Act include the rights to distribute and reproduce the copyrighted material.  *See* 17 U.S.C. § 106.[2]  "Anyone who violates any of the exclusive rights of the copyright owner as provided by section[] 106 . . . is an infringer of the copyright . . . ."  17 U.S.C. § 501(a).

The record establishes that on April 6, 2005, MediaSentry downloaded over the KaZaA network digital copies of *Coach Carter* and *Half Baked* from Time Warner internet service subscriber at IP address 24.31.148.194.  Defendant is deemed to have admitted that he used his Time Warner account to connect to the Internet on April 6, 2005, and that the IP address assigned to his computer at that time was 24.31.148.194.[3]  Defendant is also deemed to have admitted that he (1) downloaded files containing the Motion Pictures onto his computer hard drive; (2) stored the Motion Picture files in a shared directory on his computer hard drive; (3) made the files available to other users on KaZaA whenever he was connected to KaZaA; (4) was not authorized to download or distribute the Motion Pictures; and (5) knew the Motion Pictures were copyrighted.

---

[2]  Section 106 of the Copyright Act states in relevant part:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> ….

17 U.S.C. § 106.

[3]  In addition, the record also demonstrates that ISP Time Warner identified Defendant Clint Bigwood as the subscriber assigned to IP address 24.31.148.194 on April 6, 2005.

First, by downloading files containing the Motion Pictures, Defendant infringed Plaintiffs' exclusive right of reproduction. *See, e.g., A & M Records, Inc. v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 259 F. Supp. 2d 1029, 1034-35 (C.D. Cal. 2003) (downloading copyrighted media files "infringe[s] Plaintiffs' rights of reproduction" and constitutes direct copyright infringement). Second, by using KaZaA to make copies of the Motion Pictures available to thousands of people over the internet, Defendant violated Plaintiffs' exclusive right to distribute the Motion Pictures. *See Napster*, 239 F.3d at 1014 ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights."); *Hotaling v. Church Of Jesus Christ Of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) (placing unauthorized copy of copyrighted work in library's collection, listing work in library's index or catalog system, and making work available to borrowing or browsing public was distribution of work within meaning of Copyright Act). Because Defendant has admitted to downloading and making available to other KaZaA users Plaintiffs' copyrighted motion pictures, Defendant's infringement of Plaintiffs' copyright is undisputed.

### B. Willfulness of Infringement

Plaintiffs also contend that Defendant's infringing conduct was willful. An infringement is considered "willful" if the defendant had "knowledge that its actions constitute an infringement." *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). "Knowledge does not need to be proven directly but can be inferred from the defendant's conduct." *Id*. In this case, Defendant is deemed to have admitted

9

that when he downloaded the files containing the Motion Pictures, he knew the Motion Pictures were copyrighted, RFAs No. 13, and that Plaintiffs have never authorized him to download, or make available for download by others, files containing the Motion Pictures. RFAs No. 14. In light of these now established facts, the willfulness of Defendant's conduct is undisputed.

### C. Relief for Copyright Infringement

### 1. Statutory Damages

A copyright owner may elect to recover statutory damages instead of actual damages or the infringer's profits. An award of statutory damages serves two purposes: it compensates the plaintiff for the infringement of its copyrights, and it punishes the defendant for their unlawful conduct. *Los Angeles News Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). Plaintiffs have established that Defendant willfully downloaded and made available for distribution two of Plaintiffs' copyrighted motion pictures. Plaintiffs are, thus, entitled to damages for that unlawful conduct.

Section 504(c) provides:

> [a] copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work … in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C.A. § 504(c). Where, as here, the infringement is committed willfully, a court has discretion to increase the award of statutory damages to $150,000 per infringement. 17 U.S.C. § 504(c)(2). Plaintiffs seek to recover a total of only $6,000 in statutory damages, or $3,000 for each of the copyrighted works that has been infringed. Plaintiffs' assert that they are "requesting what they believe to be the amount that is reasonable and

justified under the circumstances of this case, and the costs incurred by Plaintiffs in seeking to protect their exclusive rights under copyright law." *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (noting that in measuring damages, a court should be guided by what is just in the particular case, considering the nature of the copyright and the circumstances of the infringement). Plaintiffs contend that statutory damages in an amount somewhat greater than the minimum permitted per infringement are justified because Defendant copied and distributed the Motion Pictures he knew were pirated and Defendant's actions enabled millions of others to illegally download Plaintiffs' Motion Pictures. Moreover, in addition to the attorneys' fees billed in this case, Plaintiffs allege that in order to bring a law suit like this one they have to expend somewhere between $3,000 and $5,000 per title. Goeckner Decl. ¶ 17. These costs include hiring an anti-piracy consultant like MediaSentry to find individuals participating in this infringing conduct and once MediaSentry identifies the infringers by IP address Plaintiffs' counsel must file John Doe lawsuits to obtain the discovery necessary to identify the names of the file-sharers. The Court concludes that Plaintiffs' request for statutory damages of $3,000 for each violation is a reasonable award of statutory damages in this case.

### 2. Injunctive Relief

Plaintiffs also ask the Court for an order permanently enjoining Defendant from infringing any of Plaintiffs' copyrights, now existing or later granted. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). Section 502(a) of the Copyright Act provides, in pertinent part, that

11

"[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C § 502(a).  Courts generally grant permanent injunctions where liability is clear and there is a continuing threat to the copyright.  *Pedrosillo Music, Inc. v. Radio Musical, Inc.*, 815 F. Supp. 511, 516 (D.P.R. 1993); *Merrill v. County Stores Inc.*, 669 F. Supp. 1164, 1171 (D.N.H. 1987) (injunction granted where substantial likelihood of further infringement exists).

Since it has been established that Defendant already has digital copies of *Coach Carter* and *Half Baked* on his computer, Plaintiffs are entitled to an order permanently enjoining Defendant from infringing those motion pictures.  However, an injunction extending to Plaintiffs' copyrighted works in existence but not included in this suit and works that Plaintiffs do not yet have copyright protections, is a different matter.  When dealing with the question of extending an injunction to include copyrighted material not included in the suit, the Court of Appeals for the District of Columbia stated that "[w]here . . . liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains, it is appropriate to permanently enjoin the future infringement of works owned by the plaintiff but not in the suit." *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990).  Although in this case there is sufficient evidence of past infringing conduct by Defendant, Plaintiffs have not produced evidence of any threat of continuing infringement or a substantial likelihood of threat of future infringement in Plaintiffs' other copyrighted works, let alone works that have not yet been created or copyrighted, and an injunction of sufficient scope to reach those materials is denied.

### 3. Attorneys' Fees and Costs

Plaintiffs seek $14,966.28 in attorneys' fees and $349.15 in costs for Defendant's willful violation. Section 505 of the Copyright Act provides that the Court may, in its discretion, award reasonable attorneys' fees and costs to a prevailing party in a civil copyright action. *See* 17 U.S.C. § 505. Although this Court is authorized to grant both costs and attorney's fees in successful infringement actions, those fees must be shown to be reasonable. *Id.* One of the factors necessary for the Court's determination of a reasonable fee is that the attorneys' hourly rates are reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561-66, 106 S. Ct. 3088, 3096-99, 92 L. Ed. 2d 439 (1986) (court calculates a reasonable fee by multiplying the number of hours reasonably expended on a case by an attorney's reasonable hourly rate.) Where attorneys' fees are statutorily provided, the proper rate to be applied in a lodestar calculation is the "prevailing market rate" in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895-96, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984).[4]

In the record before the Court, Plaintiffs fail to make the necessary showing. To support the reasonableness of the hourly rates of the three attorneys included in the billing statements, Plaintiffs have only submitted the declaration of an attorney, practicing in New York, that states "upon information and belief" her hourly rate of $425

---

[4] In *Blum*, the definition for "prevailing market rate" was provided as follows:

> [T]he critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. …. In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

*Blum*, 465 U.S. at 895-96 n. 11, 104 S. Ct. at 1547.

per hour is "commensurate with those generally charged for similar work in [the District of Maine]." DeNeve Decl. ¶ 13. The record is silent on the reasonableness of the other two attorneys' hourly rates. In order to properly support the reasonableness of the hourly rates, Plaintiffs should have provided the Court with information regarding their attorneys' experience in this area of the law as well as some support, by an attorney with personal knowledge, for the reasonableness of the hourly rates charged. The billing records and the statement made "upon information and belief" cannot alone establish that the rates requested are reasonable and correspond with those charged for similar work in this district. In the absence of a proper supporting materials, Plaintiffs' claim for attorneys' fees will be denied.

The costs incurred by Plaintiffs were reasonable as they were attributable to filing and service, or incidental thereto, thus, the Court will order that Plaintiffs' be reimbursed for $349.15 in costs.

## IV. CONCLUSION AND ORDER

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Summary Judgment be, and it is hereby, **GRANTED**. The Court further **ORDERS** that Judgment be entered in favor of Plaintiffs in the amount of Six Thousand Dollars ($6,000) in statutory damages and Three Hundred Forty-nine Dollars and Fifteen Cents ($349.15) in costs. The Court hereby **ENJOINS** Defendant from further infringing on Plaintiffs' exclusive rights in the reproduction and distribution in the motion pictures *Coach Carter* and *Half Baked* after

the date of this Memorandum of Decision and Order Granting Plaintiffs' Motion for Summary Judgment.

                                                  */s/ Gene Carter*_____
                                                  Gene Carter
                                                  Senior United States District Judge

Dated this 25th day of July, 2006.